Scott M. Petersen, 7599
David N. Kelley, 9137
FABIAN & CLENDENIN,
 A Professional Corporation
215 South State Street, 12th Floor
P.O. Box 510210
Salt Lake City, Utah  84151
Telephone:  (801) 531-8900

Attorneys for Railserve, Inc. Employee Benefit Plan

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IHC HEALTH SYSTEMS, INC. d/b/a LDS HOSPITAL, | |
| Plaintiff, | **MEMORANDUM SUPPORTING MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| RAILSERVE, INC. EMPLOYEE BENEFIT PLAN, | Civil No. 2:06CV00588TS |
| Defendant. | Judge Ted Stewart |

Defendant Railserve, Inc. Employee Benefit Plan, by its attorneys Fabian & Clendenin, submits the following memorandum supporting its motion for summary judgment.

## INTRODUCTION

Mr. Joseph Jeppesen was an employee of Railserve, Inc., and a participant of the Railserve, Inc. Employee Benefit Plan (the "Plan"), governed by the Employee Retirement Security Act ("ERISA").  Mr. Jeppesen was injured after driving his four wheeler ATV off a twenty to forty foot high cliff.  Mr. Jeppesen was treated at LDS Hospital from July 22, 2002 through August 1, 2002, and LDS Hospital sought payment of Mr. Jeppesen's medical bills by the Plan.  The Plan initially paid $7,348.73 for medical services, but thereafter refused further

payment because Mr. Jeppesen's medical records show that he was under the influence of amphetamines, opiates and marijuana at the time he drove his ATV off the cliff.  Because injuries sustained as a result of drug use are not covered under the Plan, Railserve denied further claims for payment of medical bills.

IHC has commenced this action against Railserve seeking benefits pursuant to ERISA. However, IHC's claim fails because it lacks standing to bring this claim pursuant to ERISA. IHC is neither a participant of the Plan nor a beneficiary of the Plan.  Furthermore, even if IHC did not lack standing to bring this claim, the Plan reviewed the medical records and other information submitted in connection with the claim for payment of medical expenses and determined that the Mr. Jeppesen's activities excluded him from coverage under the Plan. Railserve retains discretion to interpret the Plan and determine whether claims under the Plan are valid.  Because the Plan's decision was neither arbitrary nor capricious, the Court must uphold the Plan's decision denying benefits in this case.

## STATEMENT OF MATERIAL FACTS

1.      Joseph Jeppesen was an employee of Railserve, Inc. and a participant of the Benefit Plan for The Employees of Railserve, Inc. (CLAIM00004) (A copy of the Administrative Record is attached as Exhibit "A").

**The Plan**

2.      The Plan provides, in part, medical benefits to eligible employees of Railserve, Inc.  (PLAN00005).

3.      Railserve Inc. ("Railserve") is both the Plan Sponsor as well as the Plan Administrator.  As Plan Administrator, Railserve interprets the Plan and makes coverage decisions respecting benefits under the Plan.  (PLAN00062)

4.      The Plan requires "Verification of Benefits and Eligibility: 205-87103270.  Call this number to verify eligibility for Plan benefits **before the charge is incurred**."  (PLAN0005).

5.      The Plan contains a section titled "Medical Plan Exclusions and Limitations" wherein "a charge for the following incurred by all Covered Persons is not covered." (PLAN00025).

6.      One of the specific exclusion is as follows:  "**Illegal drugs or medications.** Services, supplies, care or treatment to a Covered Person for Injury or Sickness resulting from that Covered Person's voluntary taking of or being under the influence of any controlled substance, drug, hallucinogen or narcotic not administered on the advice of a Physician. Expenses will be covered for Injured Covered Person other than the person using the controlled substance."  (PLAN00027).

7.      The Plan gives the Plan Administrator (i.e. Railserve) discretion to interpret the plan and make claims determinations as follows:

> It is the express intent of this Plan that the Plan Administrator shall have maximum legal discretionary authority to construe and interpret the terms and provisions of the Plan, to make determinations regarding issues which relate to eligibility for benefits, to decide disputes which may arise relative to a Plan Participant's rights, and to decide questions of Plan interpretation and those of fact relating to the Plan.

(PLAN00062).

8.      The Plan also contains an anti-assignment provision that reads as follows:

> The benefits provided under this Plan shall not be assignable without the consent of the Plan Administrator.  The Employee may authorize the Plan Administrator to pay benefits directly to the hospital, physician, or other party providing medical treatment.  Any such payment will discharge the Plan Administrator to the extent of payments made.  Unless permitted by law, payments may not be attached nor be subject to the Employee's debts.

(PLAN00066).

**The Accident**

9. On or about July 22, 2002, Mr. Jeppesen, a twenty year old male, was injured in an accident involving an ATV four-wheeler.  (CLAIM00004; CLAIM00416).

10. Mr. Jeppesen drove the four-wheeler off a twenty to forty foot (20' – 40') cliff. (CLAIM00004; CLAIM00249).  Mr. Jeppesen was not wearing a helmet.  (CLAIM00249).

11. The Uinta County Sheriff's department responded to the accident. (CLAIM00004).

12. According to the reports of his family, Mr. Jeppesen was at first conversational, then became combative, and then unresponsive.  (CLAIM00102).

13. Mr. Jeppesen was transported to Evanston hospital where his deteriorating mental status was noted.  He was orotracheally intubated, x-rayed, and taken by Life Flight to the LDS Hospital emergency department in Salt Lake City, Utah.  (CLAIM00102).

14. Mr. Jeppesen's wife signed a document entitled Consent to Transfer as well as one entitled Intermountain Health Care Life Flight Consent For Transport And Treatment During Transport on behalf of her husband.  (CLAIM00436; CLAIM00437).

15. During his admission at LDS Hospital, the hospital was unable to obtain Mr. Jeppesen's social history, family history, or a review of his systems as his condition prevented the hospital from obtaining it.  (CLAIM00416).

16.     During his admission at LDS Hospital, a urine drug analysis found high levels of amphetamines, cannabinoids (marijuana), and opiates. (CLAIM00139; CLAIM00202).

17.     Mr. Jeppesen's wife filled out a Patient History form for Mr. Jeppesen as requested by LDS Hospital and answered each of the questions on the form **except** the question, "Do you have a history of substance abuse or addiction?" (CLAIM00089). This question was left blank. (CLAIM00089).

18.     Jr. Jeppesen was treated as LDS Hospital from July 22, 2002 through August 1, 2002. (Complaint ¶ 5).

19.     Mr. Jeppesen incurred medical bills totaling $47,611.54 from his treatment.

**The Claim**

20.     After receiving a claim for payment of medical bills, Railserve (through its agent and claims administrator, AIR, Inc.) sent Mr. Jeppesen a letter dated October 24, 2007, stating that it was unable to process the claim without a completed and signed injury detail form and subrogation form. (CLAIM00002).

21.     Mr. Jeppesen signed the form and provided the information on or about December 9, 2002. (CLAIM00003-4).

22.     On or about December 20, 2002, Railserve requested a copy of the medical history including discharge summary & operative report. (CLAIM00005).

23.     The claim was sent to ALLMED Healthcare Management on January 30, 2003 for an Independent Medical Review. Skip Freedman, M.D., the Medical Director, reviewed the documents in the claim file and concluded:

> The patient was critically injured in an ATV accident and arrived intubated (after receiving the paralyzing agent vecuronium pre-hospital) by Life Flight ambulance

4810-6080-8193                                   5

> in the emergency department, was stabilized, and hospitalized. A blood alcohol level was negative in the ED but a qualitative urine drug screen was positive for opiates, THC, and amphetamines. An assessment for possible acute impairment due to controlled substances was not possible because of the patient's condition.
>
> The duration of impairment by (or "influence") these three drug classes is variable and their detectable presence in the urine can last longer than measurable impairment in function in some cases. However, it is generally considered evidence of likely impairment when these tests are positive when they are found elevated in a situation that poor judgment may have contributed to.
>
> Based on review of the submitted records, it is the reviewer's opinion that it is probable on a more likely than not basis that the patient was under the influence of controlled substances when the accident occurred.

(CLAIM00009).

24.  On or about February 12, 2003, Railserve sent LDS Hospital an Explanation of Benefits denying IHC's claim for $40,459.71 in benefits for LDS Hospital's treatment of Joseph Jeppesen. The basis for the denial was that the claim was excluded based on the illegal drugs or medications exclusion in the Plan. (CLAIM00013).

**The Appeals**

25.  On or about July 14, 2003, Douglas D. Turek sent a letter to Railserve on behalf of IHC appealing the Plan's decision to deny benefits. (CLAIM00011-12).

26.  In his letter, Mr. Turek provides various alternative explanations for the existence of opiates, THC, and amphetamines in Mr. Jeppesen's drug screen. He claimed, for example, that Mr. Jeppesen could have been taking over the counter medicines which resulted in the elevated levels found in Mr. Jeppesen's drug screen. (CLAIM00011-12).

27.  On July 28, 2003, the Plan sent Mr. Turek a letter acknowledging receipt of the appeal, and indicating that the original denial had been based on the Dr. Freedman's independent

medical review. Notwithstanding, the Plan agreed to send the appeal letter back to Dr. Freedman for his response. (CLAIM00017).

28. On July 29, 2003, Dr. Freedman conducted a second independent medical review with the appeal information submitted by Mr. Turek. Moreover, Dr. Freedman indicated that he had reviewed "an extensive chart sent on patient Joseph Jeppesen." (CLAIM00019).

29. Dr. Freedman responded to the basis for Plaintiff's appeal and analyzed the information found in the various documents and medical files relating to the accident and Mr. Jeppesen's use of medications:

> A. "The patient was on no regular medications according to his discharge summary." (CLAIM00019);
>
> B. "On initial patient history filled out by his wife on 7/3/02 no medications are listed." (CLAIM00019);
>
> C. "It does state that he drinks 3-4 beers one time per week. **The question on substance abuse is left blank**." (CLAIM00019) (emphasis added);
>
> D. "The initial history and physical states 'Current medications: None'". (CLAIM00019);
>
> E. "The Life Flight records are reviewed. It states, 'present medications (symbol for none)'" (CLAIM00020);
>
> F. "On the trauma flow sheet it states 'current medications (symbol for none)'" (CLAIM00020); and

    G. "It was noted that the patient was given vecuronium at 19:55 on the Life Flight record dated 7/22/02.  **No other meds are noted.**"  (CLAIM00020) (emphasis added).

    H. On the history and physical it states that vecuronium was given prior to transport.  On the Trauma H&P Worksheet it states vecuronium was the only medication given prior to arrival."  (CLAIM00020).

  30. Furthermore, Dr. Freedman noted that "The patient's drug screen from 7/22/03 [sic] at 20:15 was positive for opiates, marijuana, and amphetamines."  And "There is a separate lab sheet entitled 'drugs of abuse' (LDS hospital) that states on 7/22/02 at 19:52 in the ER the patient had a positive amphetamine, opiate, and cannaboid screen."  (CLAIM00020).

  31. Dr. Freedman summarized the findings as follows:  "Based on my review the patient had a positive test upon his arrival as a trauma entry."  (CLAIM00020).

  32. Mr. Turek submitted another appeal on behalf of Plaintiff.  In a letter dated February 10, 2004, Plaintiff requested that the denial of benefits be overturned.  (CLAIM00024-25).

  33. On or about February 20, 2004, Railserve sent Mr. Turek a fax stating, "Please be advised that your most recent letter has been communicated to the plan trustee and the disposition of this claim will remain denied according to page 23, paragraph 30 [the exclusion for illegal drugs or medication], of the Railserve health plan."  (CLAIM00027).

  34. Mr. Turek again appealed the claim by letter dated September 22, 2004. (CLAIM00030-31).

35.     On October 5, 2004, Railserve sent another fax to Turek reaffirming that the claim had been denied for the same reasons. (CLAIM00035).

36.     On November 4, 2004, Mr. Turek requested copies of the documents used to make a decision on Mr. Jeppesen's claim. (CLAIM00036).

37.     On November 23, 2004, Railserve sent all of the requested documents to Mr. Turek. (CLAIM00037).

38.     The records provided to the Plan show no assignment of benefits by Mr. Jeppesen. (*see* Administrative Record).

## ARGUMENT

### I. SUMMARY JUDGMENT IN FAVOR OF RAILSERVE IS APPROPRIATE

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Jones v. Kodak Med. Assistance Plan,* 169 F.3d 1287, 1291 (10th Cir. 1999). In the present case, summary judgment in favor of Railserve is mandated because the undisputed evidence shows: 1) that Plaintiff lacks standing to bring this claim, and 2) Railserve's decision to deny benefits is reasonable and supported by the administrative record. Accordingly, Railserve's decision must be upheld.

## II.     IHC LACKS STANDING TO BRING THIS CLAIM

### A.     There Appears to be No Assignment

IHC lacks standing to bring its claims under ERISA.  Section 1132(a)(1) authorizes civil actions only "by a participant or beneficiary."  29 U.S.C. § 1132(a)(1).  As a matter of law and undisputed fact, IHC is neither a "participant" nor a "beneficiary" of the Plan for ERISA purposes.  ERISA defines "participant" as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan . . . ."  29 U.S.C. § 1002(7).  "Beneficiary" "means a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder."  *Id.*

IHC is not a "participant" in the Plan because it is not and never has been a Railserve employee.  Thus, IHC cannot maintain a cause of action under § 1132(a)(1)(B) as an ERISA "participant."  Likewise, IHC is not a "beneficiary" of the Plan because it was not designated as a "beneficiary" by a Plan "participant" or by the terms of the Plan.  A review of the records shows that there is no executed assignment of benefits.  There are at least two unsigned Consent forms that contain assignment language (CLAIM00247 and CLAIM00443), however there are no forms showing that Mr. Jeppesen ever even attempted to assign his benefits under the Plan to LDS Hospital or Intermountain Health Care.  Without a valid assignment of benefits, IHC lacks standing to maintain a cause of action under 29 U.S.C. § 1132(a)(1)(B).

### B.     The Plan Prohibits Assignment of Benefits

Even if there were an attempted assignment of benefits, such an assignment would be invalid as it is prohibited by the express language of the Plan.  The Plan states:  "The benefits provided under this Plan shall not be assignable without the consent of the Plan Administrator."

(Policy, p. 62). The Tenth Circuit has held that ERISA Plan language governs whether claims are assignable. In *St. Francis Regional Medical Center v. Blue Cross and Blue Shield of Kansas, Inc.*, 49 F.3d 1460 (10th Cir. 1995), the trial court dismissed the medical center's claims against Blue Cross where Blue Cross' policy prohibited policy holders from assigning their right to receive insurance proceeds to health care providers. St. Francis appealed, and the Tenth Circuit affirmed the dismissal of the medical center's claims. The Tenth Circuit interpreted "ERISA as leaving the assignability of benefits to the free negotiations and agreement of the contracting parties."

Here, Plaintiff is a medical center that seeks benefits pursuant to an alleged assignment of benefits that occurred without the consent of Railserve, the Plan Administrator. The Plan specifically prohibits beneficiaries from assigning their rights without the Plan Administrator's consent. Because consent was not obtained, any alleged assignment is invalid and IHC lacks standing to bring its claims. Summary judgment in favor of the Plan is therefore appropriate.

## III. RAILSERVE'S DECISION MUST BE UPHELD.

Even if Plaintiff somehow did have standing to bring its claims, summary judgment is nevertheless appropriate because Railserve's decision to deny benefits was reasonable and supported by substantial evidence in the administrative record.

### A. The Standard for Reviewing the Plan Administrator's Benefits Decision is Arbitrary and Capricious.

In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the United States Supreme Court articulated the appropriate standard of review of a denial of benefits in an ERISA case: "[c]onsistent with established principles of trust law, we hold that a denial of benefits under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a *de novo*

standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or construe the terms of the plan." 489 U.S. at 115. A court "applies an 'arbitrary and capricious' standard to a plan administrator's actions if the plan grants the administrator discretionary authority to determine eligibility for benefits or to construe the plan's terms." *Charter Canyon Treatment Ctr. v. Pool Co.,* 153 F.3d 1132, 1135 (10th Cir. 1998) (citing *Firestone*); *see also Kimber v. Thiokol Corp.,* 196 F.3d 1092, 1097 (10th Cir. 1999). "The key then, lies in determining whether a plan provides the administrator with such discretion." *Winchester v. Prudential Life Ins. Co. of America,* 975 F.2d 1479, 1483 (10th Cir. 1992).

The Plan provides that the Plan Administrator "shall have maximum legal discretionary authority to construe and interpret the terms and provisions of the Plan, to make determinations regarding issues which relate to eligibility for benefits, to decide disputes which may arise relative to a Plan Participant's rights, and to decide questions of Plan interpretation and those of fact relating to the Plan. The decisions of the Plan Administrator will be final and binding on all interested parties." Railserve is the Plan Administrator. Accordingly, this discretionary language provides Railserve with sufficient discretion to trigger the arbitrary and capricious standard of review. Thus, the Court must review Railserve's decision by applying this deferential standard of review.

The Tenth Circuit has provided guidance to the district courts in how to apply the arbitrary and capricious standard of review. When reviewing an administrator's decision under the arbitrary and capricious standard,

> "[t]he Administrator['s] decision need not be the only logical one nor even the best one. It need only be sufficiently supported by facts within [his] knowledge to counter a claim that it was arbitrary or capricious." The decision will be upheld unless it is "not grounded on *any* reasonable basis."

*Kimber v. Thiokol Corp.,* 196 F.3d 1092, 1098 (10th Cir. 1999) (court's emphasis) (quoting *Woolsey v. Marion Laboratories, Inc.,* 934 F.2d 1452, 1460 (10th Cir. 1991), and *Vega v. National Life Ins. Serv., Inc.,* 188 F.3d 287, 297 (5th Cir. 1999)). In fact, in *Kimber*, the Tenth Circuit noted that it has "upheld the administrator's decision even though the evidence conflicted" as to the decision. *Id.* at 1099. This result is due to the "narrow standard of review" possessed by a court reviewing the administrator's decision under the arbitrary and capricious standard of review. The *Kimber* court also stated: "When a plan administrator is given authority to interpret the plan language, and more than one interpretation is rational, the administrator can choose any rational alternative." *Id.* at 1100 (citing *Naugle v. O'Connell,* 833 F.2d 1391, 1396 (10th Cir. 1987)). Finally, in *Adamson v. UNUM,* 455 F.3d 1209, 1212 (10th Cir. 2006), the court reiterated: "our review inquires whether the administrator's decision resides 'somewhere on a continuum of reasonableness--even if on the low end.'" (quoting *Kimber,* 196 F.3d at 1098 (internal quotation omitted)).

A review of the administrative record demonstrates that Railserve's decision to deny benefits was not arbitrary and capricious. Rather, as shown below, Railserve properly considered the evidence in the administrative record, including the two independent medical reviews by Dr. Freedman, and properly interpreted the Plan as excluding benefits based on the Plan's exclusion for use of illegal drugs. Accordingly, summary judgment in favor of the Plan is appropriate and Plaintiff's claims should be dismissed with prejudice.

### B.  The Record Supports Railserve's Decision to Deny Benefits.

Railserve properly used its discretion in making a decision based upon the language of the Plan and the medical records received supporting the claim. Upon review of the records,

Railserve discovered that a drug test during Mr. Jeppesen's admission showed increased levels of opiates, marijuana, and amphetamines. Two outside independent medical reviews by Dr. Freedman confirm this result. The Plan specifically and unambiguously excludes "services, supplies, care or treatment to a Covered Person for Injury or Sickness resulting from that Covered Person's voluntary taking of or being under the influence of any controlled substance, drug, hallucinogen or narcotic not administered on the advice of a Physician." Accordingly, from the drug test findings, and the fact that Mr. Jeppesen drove his ATV off a twenty to forty foot cliff, Railserve determined that the injuries were a result of Mr. Jeppesen's voluntary taking of or being under the influence of any controlled substance.

Prior to making a determination, however, Railserve provided all of the medical records and other information to ALLMED, for an independent medical review. Dr. Freedman found, among other things, that "a qualitative urine drug screen was positive for opiates, THC, and amphetamines. An assessment for possible acute impairment due to controlled substances was not possible because of the patient's condition." Dr. Freedman further concluded that "it is generally considered evidence of likely impairment when these tests are positive when they are found elevated in a situation that poor judgment may have contributed to." Accordingly, Dr. Freedman pointed that, "it is probable on a more likely than not basis that the patient was under the influence of controlled substances when the accident occurred." Based on the medical information, the information surrounding the incident that led to Mr. Jeppesen's treatment at LDS Hospital, and Dr. Freedman's independent medical review, Railserve denied the claim as excluded by the Plan.

IHC appealed the denial through its attorney and argued, among other things, that the opiates and amphetamines could have been legally prescribed and ingested or provided by the life flight crew as part of their treatment of Mr. Jeppesen before his urine test in the hospital. Railserve again sent the medical records to Dr. Freedman for review along with IHC's arguments. On July 29, 2003, Dr. Freedman again reviewed the information and responded to the arguments presented in IHC's appeal. The response noted the following evidence.

First, the discharge summary showed that Jeppesen was on no regular medications.

Second, Mr. Jeppesen's wife filled out a Patient History form 7/23/02 and no medications were listed. Furthermore, Mr. Jeppesen's wife answered out every question except one; whether Mr. Jeppesen has a history of substance abuse. While this one question regarding illegal drugs is left blank, all other questions regarding Mr. Jeppesen's medical history are answered.

Third, the Life Flight records were reviewed, and Dr. Freedman found no reference that Mr. Jeppesen was on any other medications than vecuronium (a muscle relaxant used in surgeries and to assist with breathing). And the Trauma H&P Worksheet states vecuronium is the only medication that was given prior to arrival at the hospital. (CLAIM00019-20). Therefore, Mr. Jeppesen was not on any medications, and no medications were provided to Mr. Jeppesen prior to being admitted at the hospital.

Accordingly, Railserve considered all of the arguments presented by IHC, as well as the medical records from the various health care providers, and found, based on Dr. Freedman's independent medical review, that the most likely explanation was that Mr. Jeppesen was under the influence of opiates, marijuana, and/or amphetamines when he drove his ATV off the cliff. Because the Plan specifically excludes payment of expenses for medical services for injuries resulting from

the use of illegal drugs, Railserve properly denied the claim for payment of medical expenses.

Railserve's decision was a correct and proper decision, but even if it were not a clear answer, summary judgment would still be warranted.  The function of the Court is to determine "whether the administrator's actions were arbitrary or capricious, not in determining whether [claimant] was, in the district court's view, entitled to . . . benefits."  *Sandoval v. Aetna Life and Cas. Ins. Co.,* 967 F.2d 377, 381 (10th Cir. 1992).  Railserve's denial is both reasonable and supported by substantial evidence in the administrative record.  Accordingly, the court should grant Railserve's motion and dismiss IHC's claims with prejudice.

## CONCLUSION

Summary judgment is warranted because IHC lacks standing to bring its claims pursuant to 28 U.S.C. § 1132.  There is no evidence that Jeppesen made an assignment of benefits to IHC, and even if he did, it would be invalid under the terms of the Plan.  Furthermore, the Plan Administrator, Railserve, did not abuse its discretion in determining that benefits under the Plan were not available because Mr. Jeppesen's use of illegal drugs excluded his coverage under the terms of the Plan.  Accordingly, the Court should grant Railserve's Motion for Summary Judgment, and dismiss each of Plaintiff's claims with prejudice.

DATED this 12th day of March 2007.

/s/ Scott M. Petersen
Scott M. Petersen
David N. Kelley
Fabian & Clendenin,
Attorneys for Defendant Railserve, Inc.
Employee Benefit Plan

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a true and correct copy of the foregoing **MEMORANDUM SUPPORTING MOTION FOR SUMMARY JUDGMENT** to be mailed, postage prepaid, this 12th day of March 2007, to the following:

>Douglas Turek, Esq.
>THE TUREK LAW FIRM, PLLC
>25231 Grogan's Mill Road, Suite 110
>The Woodlands, Texas 77380


/s/ Susanne Judd_____

ND: 4810-6080-8193, Ver 1