Scott M. Petersen, 7599
David N. Kelley, 9137
FABIAN & CLENDENIN,
  A Professional Corporation
215 South State Street, 12th Floor
P.O. Box 510210
Salt Lake City, Utah  84151
Telephone:  (801) 531-8900
Facsimile: (801) 531-1719
spetersen@fabianlaw.com
dkelley@fabianlaw.com

Attorneys for Railserve, Inc. Employee Benefit Plan

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IHC HEALTH SYSTEMS, INC. d/b/a LDS HOSPITAL, | |
| Plaintiff, | **REPLY MEMORANDUM SUPPORTING MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| RAILSERVE, INC. EMPLOYEE BENEFIT PLAN, | Civil No. 2:06CV00588TS |
| Defendant. | Judge Ted Stewart |

Defendant Railserve, Inc. Employee Benefit Plan, by its attorneys Fabian & Clendenin, submits the following reply memorandum supporting its motion for summary judgment.

### REPLY TO STATEMENT OF UNDISPUTED FACTS

It is settled law in this District that "[a]ll material facts of record meeting the requirements of Fed. R. Civ. P. 56 that are set forth with particularity in the statement of the movant will be *deemed admitted* for the purpose of summary judgment, unless specifically controverted by the statement of the opposing party identifying material facts of record meeting

the requirements of Fed. R. Civ. P. 56." (Emphasis added) DUTCivR 56-1(c); *see also, Johnson v. Life Investors Insurance Co. of America*, 996 F. Supp. 1105, 1107 (D. Utah 1998), *rev'd in part on other grounds*, 216 F.3d 1087 (10th Cir. 2000).

In its initial supporting memorandum, Railserve provided thirty-eight factual statements to which it contends no genuine issue of material fact exists, each supported by appropriate citation to the administrative record. In its opposition memorandum, Plaintiff ("IHC") did not controvert any of Railserve's factual statements, let alone by identifying any material facts of record that meet the requirements of Rule 56. Thus, all of Railserve's factual statements are deemed admitted.

While IHC apparently claims to dispute two statements of fact (by virtue of labeling a section of its brief "Statement of Material Facts For Which A Genuine Issue Exists"), its "disputes" fail to address any specific fact identified in Railserve's original motion. Moreover, the citations provided for them do not support the proposition for which they are given. Thus, they cannot preclude summary judgment.

Nevertheless, Railserve addresses these "facts" in order.

1. The first part of Paragraph 1 of IHC's statement of material facts states: "Without notice of the Plan's anti-assignment clause, Mr. Jeppesen assigned his benefits to Plaintiff through a signed 'Consent and Conditions of Admission' form, containing an Assignment of Benefits clause providing . . . ." This statement is wholly without support. IHC does not know whether Mr. Jeppesen had notice of the Plan provisions. The quoted language certainly does not establish that, nor does the attached affidavit of Matt Cardon, apparently the Appeals Manager for Cardon Healthcare Network, Inc., an alleged agent for IHC. Simply put, these sources are

not in any position to testify as to what Mr. Jeppesen knew or did not know at the time of his treatment or the alleged assignment.

The second part of Paragraph 1 appears to be quoted language from the document attached to Mr. Cardon's affidavit containing the assignment of benefits allegedly executed by Mr. Jeppesen. Railserve does not dispute that this quoted language is contained in the attached document. However, the attachment is problematic for two reasons.

First, Mr. Cardon does not lay appropriate foundation for the purported assignment. He is not Mr. Jeppesen and he does not explain how it is he recognizes Mr. Jeppesen's signature such that he can authenticate the document. Second, the assignment document indicates it was signed July 12, 2006, approximately four years after Mr. Jeppesen's admission to the hospital and treatment, nearly two years after Railserve's October 5, 2004 final denial, and just six days before IHC filed its Complaint.

2. Paragraph 2 is irrelevant and does not preclude summary judgment. First, Plaintiff's statement is simply argument, and does not actually contest the statement of fact. Second, Plaintiff admits that the doctor's reports at CLAIM00139 and CLAIM 00202 state that Mr. Jeppesen tested positive for Amphetamines, Opiates, and Cannaboids. However, the "level" of illegal substances in Mr. Jeppesen's body is not the question. Rather, as the Plan language indicates, the question is whether Mr. Jeppesen's injury "result[ed] from that Covered Person's voluntary taking of or being under the influence of any controlled substance . . . ." (PLAN00027).

In its initial supporting memorandum, Railserve provided the basis in the record that supported its finding that Mr. Jeppesen's injury indeed resulted from him being under the

influence of a controlled substance. (*See* Mem. Supporting Mot. for Summ. J., ¶¶ 9-38). Support for Railserve's decision included (1) the fact that Jeppesen drove a four-wheeler off a 20'-40' cliff, (2) he was initially combative, then unresponsive to immediate medical attention, (3) his wife left blank the portion of the form asking for a history of substance abuse, (4) his drug screen tested positive for opiates, marijuana, and amphetamines, and (5) the opinion of an outside expert, Skip Freedman, M.D., indicated more likely than not that Mr. Jeppesen was under the influence of illegal substances when his injury occurred.

## ARGUMENT

**I.     IHC LACKS STANDING TO BRING THIS CLAIM**

    **A.     The Plan Prohibits Assignment of Benefits**

IHC has submitted a document that it claims is an assignment of benefits executed by Mr. Jeppesen. Setting aside the foundational and timing problems outlined above, IHC does not dispute that the Plan unambiguously prohibits the assignment of benefits. Instead, IHC claims that the Plan's anti-assignment provision is against public policy. The Tenth Circuit, however, has already addressed whether an ERISA plan may prohibit assignment of benefits and its conclusion was that such assignments are valid, and not against public policy.

In *St. Francis Regional Medical Center v. Blue Cross and Blue Shield of Kansas, Inc.*, 49 F.3d 1460 (10th Cir. 1995), the Tenth Circuit held that the language of an ERISA Plan (not public policy) governs whether claims are assignable. *Id.* The Tenth Circuit reasoned that "ERISA is silent on the issue of the assignability of benefits in insurance plans. Yet, by contrast, ERISA specifically bars the assignment of benefits obtained under pension plans. 29 U.S.C. § 1056(d)(1)." Therefore, the Tenth Circuit concluded that Congress "intended to treat such

benefits differently, and that Congress did not intend to enact a policy precluding their assignability." *Id.* (citations omitted).

The health care provider argued that Kansas law prohibiting restrictions on the assignment of health care benefits allowed the court to ignore the plan's anti-assignment language. *St. Francis*, *supra* at 1463. The Tenth Circuit disagreed, explaining that "ERISA preempts state law on the issue of the assignability of benefits because material provisions in the employee benefits plans covered by ERISA would be directly affected if Kansas law were to be interpreted as prohibiting restrictions on assignment." *Id.* at 1464.

Just as in *St. Francis*, the Plan in this case states: "The benefits provided under this Plan shall not be assignable without the consent of the Plan Administrator." (Policy, p. 62). Plaintiff's argument that such a provision violates public policy is simply wrong. To hold otherwise would contradict settled Tenth Circuit law as provided in *St. Francis*.

As the Tenth Circuit explained, Congress has not precluded plans from prohibiting assignment of benefits. Therefore, because the Plan prohibits assignments, IHC lacks standing to bring its claims, and the Court should grant Railserve's Motion for Summary Judgment.

## B. The Plan Has Not "Waived" the Anti-Assignment Clause contained in the Plan.

Plaintiff argues that Railserve has waived its right to argue that assignments are prohibited under the terms of the Plan because it did not challenge the validity of the purported assignment during the administrative proceedings. IHC argues that Railserve denied Plaintiff's appeals on February 12, 2003, July 28, 2003, February 20, 2004 and October 4, 2004, and failed to mention the plan's prohibition on assignment. However, it is undisputed that there was no assignment to challenge during these times as the purported assignment document carries a July

12, 2006 date.  Simply put, IHC did not posess any assignment until nearly two years <u>after</u> all administrative remedies had been exhausted under the Plan.  In fact, it appears from the date of execution of the purported assignment that IHC obtained it solely for purposes of bringing this lawsuit.  Thus, IHC's waiver argument fails.

### III.     RAILSERVE'S DECISION MUST BE UPHELD.

IHC lacks standing to bring its claims.  However, even if it had standing, its claims should nevertheless be dismissed because Railserve's decision to deny benefits was reasonable and supported by substantial evidence in the administrative record.  In its opposition brief, Plaintiff identifies an incorrect standard of review, and fails to bring forth any evidence to support its position.

### A.     The Standard for Reviewing the Plan Administrator's Benefits Decision is Arbitrary and Capricious.

The parties agree that because the Plan's language gives Railserve discretion, the Court is to review Railserve's decision under an arbitrary and capricious standard of review.  IHC, however, argues that Railserve's decision should be subject to less deference because it had an inherent conflict of interest when it denied benefits.  Plaintiff cites *Fought v. UNUM Life Insurance Company of America*, 379 F.3d 997 (10th Cir. 2004) as support for its conflict of interest argument.  *Fought*, however, is inapposite.  The "inherent conflict" analysis applied by the *Fought* court applies only for insured plans where the plan administrator is also the <u>insurance company</u>.  Railserve, however, is not an insurance company.  Thus, the "inherent conflict" analysis of *Fought* is inapplicable.

Instead, to establish a conflict of interest, IHC must show actual "evidence of a conflict of interest, i.e. proof 'that the plan administrator's dual role jeopardized his impartiality.'"

*Kimber v. Thiokol Corp.,* 196 F.3d 1092, 1097 (10th Cir. 1999) (quoting *Jones v. Kodak Med. Assistance Plan,* 169 F.3d 1287, 1291 (10th Cir. 1999)). "The mere fact that the plan administrator was a [company] employee is not enough per se to demonstrate a conflict." *Kimber*, 196 F.3d at 1097 (quoted by *Fought,* 379 F.3d at 1005). Accordingly, this Court does not shift the burden to Railserve under any inherent conflict of interest analysis, but rather looks to see if IHC has provided any evidence of an actual conflict. If so, the Court takes the evidence of conflict of interest and uses it as a "factor" in determining whether Railserve's denial was arbitrary and capricious.

Here, Plaintiff has produced no evidence of a conflict. Therefore, Railserve's decision is entitled to the maximum amount of deference. Pursuant to the most recent direction given by the Tenth Circuit regarding a review of the plan administrator's decision to deny benefits, "our review inquires whether the administrator's decision resides 'somewhere on a continuum of reasonableness--even if on the low end.'" *Adamson v. UNUM,* 455 F.3d 1209, 1212 (10th Cir. 2006) (quoting *Kimber,* 196 F.3d at 1098 (internal quotation omitted)). It is the Court's responsibility to review Railserve's decision and determine whether there exists in the administrative record substantial evidence to support Railserve's decision.

**B.     The Record Supports Railserve's Decision to Deny Benefits.**

The Plan specifically and unambiguously excludes "services, supplies, care or treatment to a Covered Person for Injury or Sickness resulting from that Covered Person's voluntary taking of or being under the influence of any controlled substance, drug, hallucinogen or narcotic not administered on the advice of a Physician." During the administrative process, Railserve discovered substantial evidence to support a decision that the foregoing exclusion applies. The

evidence includes (1) the fact that Jeppesen drove a four-wheeler off a 20'-40' cliff, (2) he was initially combative, then unresponsive to immediate medical attention, (3) his wife left blank the portion of the form asking for a history of substance abuse, (4) his drug screen tested positive for opiates, marijuana, and amphetamines, and (5) the opinion of an outside expert, Skip Freedman, M.D., indicated on two occasions that more likely than not Mr. Jeppesen was under the influence of illegal substances when his injury occurred.  Based on these findings, Railserve determined that the injuries were a result of Mr. Jeppesen's voluntary taking of or being under the influence of a controlled substance.

Furthermore, as evidenced by Plaintiff's brief, there was absolutely no evidence to contradict Railserve's findings.  IHC has presented no evidence to contradict the finding that Mr. Jeppesen's use of multiple controlled substances resulted in his driving his ATV off the cliff. Accordingly, in weighing the evidence, Railserve's decision is more than reasonable under the circumstances.  It is significant to note that "[t]he district court's responsibility [lies] in determining whether the administrator's actions were arbitrary and capricious[1], not in determining whether [the plaintiff] was, in the district court's view, entitled to . . . benefits. *Sandoval v. Aetna Life & Cas. Inc. Co.*, 967 F.2d 377, 381 (10th Cir. 1992) (footnote added).  Without contradictory evidence, Railserve's decision was at least reasonable and supported by substantial evidence.

## CONCLUSION

Summary judgment is warranted because IHC lacks standing to bring its claims pursuant to 28 U.S.C. § 1132.  Mr. Jeppesen's attempted assignment to IHC is invalid under the terms of the Plan.

---

[1] *i.e.* "sufficiently supported by facts within [its] knowledge." *Kimber*, 196 F.3d at 1098.

Furthermore, Railserve did not abuse its discretion in determining that benefits under the Plan were not available because Mr. Jeppesen's use of illegal drugs excluded his coverage under the terms of the Plan.  Accordingly, the Court should grant Railserve's Motion for Summary Judgment and dismiss each of Plaintiff's claims with prejudice.

DATED this 7th day of May 2007.

/s/ David N. Kelley_____
Scott M. Petersen
David N. Kelley
Fabian & Clendenin,
Attorneys for Defendant Railserve, Inc.
Employee Benefit Plan

10

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing **REPLY MEMORANDUM SUPPORTING MOTION FOR SUMMARY JUDGMENT** to be sent via email pursuant to the Court's electronic filing system this 7th day of May 2000:

> Douglas Turek, Esq.
> THE TUREK LAW FIRM, PLLC
> 25231 Grogan's Mill Road, Suite 110
> The Woodlands, Texas 77380

/s/ Susanne Judd_____

ND: 4821-6175-8465, Ver 1